1999 ME 26

Brian JACKSON

v.

TEDD–LAIT POST NO. 75,
AMERICAN LEGION.

Supreme Judicial Court of Maine.

Argued Feb. 3, 1999.

Decided Feb. 11, 1999.

John Bunker, (orally), Paine, Lynch & Harris, P.A., Bangor, for plaintiff.

Christopher C. Dinan, (orally), Monaghan, Leahy, Hochadel & Libby, LLP, Portland, for defendant.

Before WATHEN, C.J., and RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Brian Jackson appeals from a judgment entered on a jury verdict in the Superior Court (Penobscot County, *Kravchuk, C.J.*) in favor of Tedd–Lait Post No. 75, American Legion. Jackson contends that the trial court erred in dismissing the two negligence counts of his complaint and in the jury instructions. We affirm the judgment

[¶ 2] On the afternoon of October 6, 1991, Brian Jackson and a friend were drinking at the American Legion bar in Old Town. According to Jackson, he consumed approximately twenty-five to thirty beers and five to seven shots of vodka at the Legion, in addition to approximately six beers consumed earlier at the friend's house. In the early evening, Jackson, who was a regular customer at the Legion, got in an argument with the bartender, and she ordered him to leave. It was raining heavily, and he asked her to call him a cab. She refused, and he left.

[¶ 3] A police officer, who knew Jackson well, saw him standing in the street. The officer moved Jackson to the sidewalk, told him to stay there and promised to give him a ride home as soon as the officer responded to a call at a business down the street. A few minutes later the officer saw Jackson lying in the street. He had been hit by a car. Jack-

son suffered a fractured knee, and he sustained skin abrasions.

[¶ 4] Jackson brought an action against the Legion for negligence and violation of the Maine Liquor Liability Act (MLLA), 28–A M.R.S.A. §§ 2501–2520 (1988 & Supp.1998).[1] The case was tried to a jury, and at the close of the evidence, the trial court granted the Legion's motion to dismiss the negligence counts of the complaint for failure to state a claim on which relief could be granted.[2] The remaining count, alleging reckless conduct, went to the jury. The jury found that the Legion had not been reckless, and judgment was entered accordingly.

[¶ 5] Count II of Jackson's complaint alleges that the Legion was negligent in refusing to call Jackson a taxi. Count III alleges that the Legion was negligent "[b]y knowingly permitting the Plaintiff to become dangerously intoxicated while on the Defendant's premises, and by failing to take reasonable steps to ensure safe transportation for the Plaintiff upon leaving the club." In ruling for the Legion, the trial court relied on the exclusivity provision of the MLLA: "This Act is the exclusive remedy against servers who may be made defendants under section 2505, for claims by those suffering damages based on the servers' service of liquor." 28–A M.R.S.A. § 2511 (1988).

### I. Negligence

[¶ 6] Jackson argues that the negligence counts are not barred by section 2511 because they are not based on the Legion's service of liquor. He contends that the Legion's conduct of ejecting him from the premises and refusing to call him a cab constituted negligence.

[¶ 7] It is a truism that in order for there to be negligence there must be a duty owed by a defendant to a plaintiff. "Duty involves the question of 'whether the defendant is under any obligation for the benefit of the particular plaintiff.'" *Trusiani v. Cumberland & York Distributors, Inc.*, 538 A.2d 258, 261 (Me.1988) (quoting W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed.1984)).

[¶ 8] Jackson asserts, but does not cite any authority for, the proposition that there is a duty of a business to see that an intoxicated customer is not injured after he leaves the premises. Jackson claims that the Legion had an affirmative duty to call him a taxi. This is nonfeasance rather than misfeasance, and absent a special relationship, the law imposes no duty to act affirmatively to protect someone from danger unless the dangerous situation was created by the defendant. *See Hughes v. Beta Upsilon Bldg. Assoc.*, 619 A.2d 525, 527 (Me.1993); RESTATEMENT (SECOND) OF TORTS § 314 (1965). Here there is no special relationship between the Legion and Jackson unless it is one created by the service of a large quantity of liquor to Jackson. Likewise, if a dangerous situation was created by the Legion, it was caused by the service of liquor.

[¶ 9] Jackson argues that the Restatement provides that an innkeeper has a duty toward its guests to protect them "against unreasonable risk of physical harm." RESTATEMENT (SECOND) OF TORTS § 314A. Even if we were to adopt this provision of the Restatement and hold that the Legion was in the same position as an innkeeper,[3] Jackson still would not escape the effects of the exclusivity provision of the MLLA. We would have to conclude that the unreasonable risk was primarily created by the serving of liquor. Because the claim for damages would be based on the service of liquor, the Legion would not be liable for common law negli-

---

**1.** The driver of the car was originally named as a defendant, but the action was dismissed as to him because Jackson was unable to serve process on him.

**2.** All of the parties and the court treated the Legion's motion as a Rule 12(b)(6) motion. Since the court indicated that it took the evidence presented at the trial in consideration in ruling on the motion, the motion should be considered as a motion for judgment as a matter of law pursuant to M.R. Civ. P. 50(a).

**3.** We also note that the comment to that Restatement section states that "an innkeeper [is not] under a duty to a guest who is injured or endangered while he is away from the premises." RESTATEMENT (SECOND) OF TORTS § 314A cmt. c.

gence. In this case it is the service of liquor that is at the very center of creating the special relationship, dangerous situation or unreasonable risk, and, therefore, the exclusivity provision of the MLLA is applicable.

[¶ 10] A number of courts facing similar factual situations have declined to find the server of liquor liable for common law negligence. The California Court of Appeal held that a bar had no duty to arrange a ride home for an intoxicated patron who asked for one, and who subsequently was hit by a car while walking home. *See Andrews v. Wells,* 204 Cal.App.3d 533, 251 Cal.Rptr. 344, 347–49 (1988). *See also DeBolt v. Kragen Auto Supply, Inc.,* 182 Cal.App.3d 269, 227 Cal. Rptr. 258, 260–61 (1986) (holding that a host who ejected a guest from a party, knowing that she would drive, had statutory immunity, and negligence claim for not providing safe transportation would not lie); *McCall v. Villa Pizza, Inc.,* 636 A.2d 912, 914–15 (Del. 1994) (finding a server's ejection of an intoxicated patron without calling a cab did not give rise to negligence liability); *Kelly v. Sinclair Oil Co.,* 476 N.W.2d 341, 354–55 (Iowa 1991) (holding that ejecting intoxicated patron without providing transportation breaches no duty because there is no special relationship).

[¶ 11] The purpose and legislative history of the MLLA further support the conclusion that section 2511 was intended to forestall the imposition of liability on a server of liquor who fails to arrange transportation for an intoxicated patron. We upheld the constitutionality of that section in *Peters v. Saft,* 597 A.2d 50, 54 (Me.1991), where we said, "The exclusivity provision is rationally related to the stated goal of making the liability of the server predictable, while at the same time giving victims a cause of action that was

heretofore unclear." If we were to hold that a server could be liable in the situation presented by this case, that predictability would disappear.[4]

[¶ 12] The trial court did not err in refusing to submit the negligence counts of Jackson's complaint to the jury.

## II. *Jury Instructions*

[¶ 13] Count I, which was presented to the jury, alleged that Jackson's injuries were proximately caused by the Legion's reckless service of liquor in violation of the MLLA, 28–A M.R.S.A. § 2507 (1988 & Supp.1998).[5] The trial court instructed the jury on reckless service of liquor:

Now, with respect to Maine's Liquor Liability Law, you may only find the defendant American Legion liable for damages to the plaintiff, if the plaintiff proves by a preponderance of the evidence that the American Legion, one recklessly served liquor to Mr. Jackson, the plaintiff; and two, that Mr. Jackson, the plaintiff, was visibly intoxicated.

The American Legion's conduct is reckless if, one, it intentionally served liquor to Mr. Jackson; two, Mr. Jackson was visibly intoxicated; and three, the American Legion, its employees or agents, consciously disregarded an obvious and substantial risk that serving liquor to Mr. Jackson will cause harm to Mr. Jackson.

The court then instructed the jury on the definition of "visibly intoxicated" and "intoxication" utilizing the statutory definitions. *Id.* § 2503(2), (7). It went on to explain "disregard of the risk" using the words of section 2507(3).

[¶ 14] Jackson objected to the instruction and argued that the question for the jury was whether the Legion engaged in reckless conduct, not just the reckless serv-

---

**4.** The MLLA was adopted in part because servers had a difficult time obtaining insurance, when the extent of their common law liability outside the previous Dram Shop Act was unclear. *See* Report of the Joint Standing Committee on Legal Affairs. *The Dram Shop Act and Liquor Liability Law in Maine* 8 (1986). *See also* William P. Shumaker, Comment, *From "Maine Law" to Model Act: Liquor Liability in Maine,* 39 Me. L.Rev. 149, 200 (1987) ("Having achieved what it believed was an equitable balance of duties and

liabilities among the various interested parties, the Committee did not want the balance upset by the intrusion of ... additional common law liability.").

**5.** As an intoxicated adult, Jackson was barred from suing under the MLLA for negligent service of liquor. *See* 28–A M.R.S.A. § 2504(2)(A) (1988).

ing of liquor, but conduct encompassing both reckless service of liquor and reckless failure to call a cab. The trial court correctly limited its instruction on reckless conduct to that defined by the statute. The MLLA provides a remedy for the reckless service of liquor but not for any other reckless conduct. "A server who recklessly serves liquor to a visibly intoxicated individual is liable for damages proximately caused by that individual's consumption of the liquor." *Id.* § 2507(2). The trial court did not err in declining to instruct the jury on reckless conduct other than the reckless service of liquor.

The entry is

Judgment affirmed.